IN RE ESTATE OF ALTA P. CLAUSEN, deceased.

STATE BOARD OF SOCIAL WELFARE, appellant, v. POTTAWATTAMIE COUNTY, appellee.

No. 51802.

(Reported in 139 N.W.2d 196)

December 14, 1965.

Lawrence F. Scalise, Attorney General, and Nolden Gentry, Assistant Attorney General, for appellant.

F. J. Kraschel, County Attorney, and Thomas L. Root, Assistant County Attorney, both of Council Bluffs, for appellee.

Garfield, C. J.—The administrator of the estate of Alta P. Clausen, deceased, filed application in probate for determination of priority of claims for old-age assistance furnished decedent and her husband by the State Board of Social Welfare under chapter 249, Code, 1962 (and earlier Codes), and a claim for care furnished decedent in the state mental health institute at Clarinda and the Pottawattamie County home by the county under Code chapter 230. The state board has appealed from the order following trial to the court on stipulated facts. The board contends the claims are equal in weight and effect and the avail-

able estate funds, insufficient to pay the claims in full, should be prorated between the two claimants.

Alta P. Clausen died intestate June 11, 1963, a resident of Pottawattamie County. Her husband Chris, a resident of Harrison County, survived. Alta received old-age assistance of $884.84 from the state board (or department) from September 1, 1949, to October 1, 1951. A copy of the board's order with notice of lien (exhibit B) was filed in the office of the Pottawattamie County recorder and there indexed September 15, 1949, as provided by Code section 249.20, infra. The notice recited in part:

"This is to certify that the application for assistance of the above named person as provided for by Chapter 249, Code of Iowa, 1946, as amended, has been approved. The assistance furnished under this order, together with subsequent orders of the State Department of Social Welfare, is made a lien by law on any real estate owned * * * by the person above named. * * * This order shall be subject to review at any time by the Department and the amount awarded may be increased, decreased, or discontinued.

"You are hereby notified that the exact amount of money paid for assistance to the recipient named in the foregoing order may be determined by communicating with the State Department of Social Welfare at Des Moines, Iowa."

Decedent received care at the state mental health institute at Clarinda from September 28, 1951, to March 31, 1957, for which Pottawattamie County paid $5249.58. She was not released from the institute as cured but on the latter date was transferred to the Pottawattamie County home where she received care until March 31, 1962, amounting to $3423.33. Decedent again received old-age assistance from the state board from April 1, 1962, to April 1, 1963, in the sum of $2336.82.

Alta's husband Chris also received old-age assistance of $2265.01 from September 1, 1958, to June 11, 1963, when Alta died. (He continued to receive such assistance but any claim for payments after decedent's death is not here involved.)

April 22, 1962, Alta's brother, J. N. Hutchison, died leaving one fifth of his net estate to her. Real property in his estate

consisted of a home in Missouri Valley, Harrison County, and a farm in Pottawattamie County. Pursuant to authority in his will Hutchison's executrix sold the real estate and Alta's administrator received from her $12,855.32 as Alta's share in the estate. This is virtually the only asset in Alta's estate. It is clear its receipt gave rise to this controversy between the state board and Pottawattamie County over priority of their respective claims.

On September 19, 1958, the state board filed and there was indexed in the office of the Harrison County recorder a notice of lien on any real estate owned by Chris (who had none) or Alta, his spouse, with a copy of the board's order, for old-age assistance furnished Chris. This was done pursuant to Code section 249.20, infra, and the document was similar to the one filed in Pottawattamie County September 15, 1949, from which we have quoted. No copy of an order with notice of lien by the state board, for old-age assistance furnished decedent, was filed in Pottawattamie County other than the one filed September 15, 1949.

The names of Alta and Chris Clausen were properly indexed in the Pottawattamie County auditor's office and the amounts paid for Alta's care at Clarinda and claimed for her care in the county home were there recorded as provided by Code section 230.26, infra. This record was transcribed to the Harrison County auditor about June 11, 1963, when decedent died.

June 21, 1963, Pottawattamie County filed its claim in probate in decedent's estate for $8672.91. Of this $5249.58 was paid for decedent's care at the Clarinda institution and $3423.33 was claimed for her care at the county home to March 31, 1962.

July 29, 1963, the state board filed its claim in the estate for $3221.66. Of this $884.84 was for old-age assistance furnished decedent from September 1, 1949, to October 1, 1951, and $2336.82 for such assistance from April 1, 1962, to April 1, 1963. At the same time the state board filed its claim for the $2265.01 old-age assistance furnished Chris.

It appears from the above factual statement, perhaps needlessly detailed, that old-age assistance to decedent was terminated October 1, 1951, when she was admitted to the tax-supported institution at Clarinda in accordance with Code section

249.6, subsection 5. The state board assigned this reason for such discontinuance. March 10, 1962, decedent through her guardian reapplied for old-age assistance and, as stated, received it from April 1, 1962, to April 1, 1963.

On the above facts the trial court ruled the state board had a lien on the share of the real estate decedent acquired from her brother upon his death for $884.84, amount of old-age assistance furnished her from September 1, 1949, to October 1, 1951; Pottawattamie County had a lien on the same property for $6286.12 for decedent's care at Clarinda and at the county home until August 31, 1958; these two sums should be paid in full; claims of the county for care furnished decedent from September 1, 1958, to March 31, 1962, and of the state board for old-age assistance furnished Chris from September 1, 1958, to March 31, 1962, are claims of the same class and should be prorated because of insufficient estate funds to pay the claims in full.

Nothing was allowed the state board on its claim for old-age assistance furnished decedent from April 1, 1962, to April 1, 1963, nor for such assistance furnished Chris from April 1, 1962, until decedent's death June 11, 1963. As stated, the county furnished decedent no care after March 31, 1962. Apparent significance of the dates August 31 and September 1, 1958, in the court's ruling is that old-age assistance to Chris commenced September 1.

As stated at the outset, the state board contends its claims and that of the county are equal in weight and effect and available estate funds should be prorated between them.

These statutory provisions apply to the county's claim:

Section 230.25, Code, 1962, states: "Any assistance furnished under this chapter shall be and constitute a lien on any real estate owned by the person committed to such institution * * *."

It seems to be conceded this statute includes the assistance the county furnished at Clarinda and also at the county home.

Section 230.26 provides in substance the county auditor shall keep an accurate record of the maintenance furnished under chapter 230, with an index of those receiving it, which shall constitute notice of the lien referred to in section 230.25.

Section 230.30 states: "On the death of a person receiving or who has received assistance under the provisions of this chapter, the total amount paid for their care shall be allowed as a claim of the second class against the estate of such decedent."

These statutory provisions apply to the state board's claims:

Section 249.19 provides: "On the death of a person receiving or who has received assistance under this chapter * * *, the total amount paid as assistance, shall be allowed as a lien against the real estate in the estate of the decedent and as a claim of the second class against the personal estate of such decedent, * * *."

Section 249.20 states: "In any event, the assistance furnished under this chapter shall be and constitute a lien on any real estate owned either by the husband or wife for assistance * * * furnished to either of such persons. Whenever an order is made for such assistance to any person, a copy of such order shall be indexed and recorded in the manner provided for the indexing of real-estate mortgages in the office of the county recorder of the county in which the recipient lives and in which the real estate belonging to the recipient or the spouse of such recipient is situated, and such recording and indexing shall constitute notice of such lien. * * *."

It will be noticed the applicable provisions of chapters 230 and 249 are quite similar and nothing is said as to priority of liens claimed under the two chapters.

██ ██ Until decedent acquired the real estate her brother left her at his death April 22, 1962, she had no property to which the lien of either the state board or that of the county could attach. As the trial court held, title to decedent's share of this real estate vested in her at that time subject to payment of her brother's debts and costs of administering his estate. Coomes v. Finegan, 233 Iowa 448, 454, 455, 7 N.W.2d 729, 732, and citations; Central Fibre Products Co. v. Lorenz, 246 Iowa 384, 391, 66 N.W.2d 30, 34. Both these precedents hold a prior judgment against a devisee of realty attaches at the instant of the testator's death. We see no reason why the same rule should not apply to other statutory liens such as those here involved.

██ It is well settled that liens of judgments entered in favor of different persons at different times attach to property of the

330

debtor subsequently acquired at the same time and no judgment has priority over another based on its prior rendition. Ware v. Purdy, Iowa, 60 N.W. 526, 529, 530; Kisterson v. Tate, 94 Iowa 665, 667, 63 N.W. 350, 58 Am. St. Rep. 419; Ware v. Delahaye & Purdy, 95 Iowa 667, 682–684, 64 N.W. 640; Zink v. James River National Bank, 58 N. D. 1, 224 N.W. 901, 67 A. L. R. 1294, and annotation, 1301; 49 C. J. S., Judgments, section 484b, page 924; 30A Am. Jur., Judgments, section 527. Again, we see no reason why this rule should not apply to the statutory liens claimed here.

We cannot agree the state board was not entitled to any lien for any old-age assistance furnished Chris. It is clear this assistance was furnished him under chapter 249. According to section 249.20, supra, the state board had a lien on any real estate owned by decedent for assistance furnished either her or Chris. As previously explained, the state board filed on September 19, 1958, in the Harrison County recorder's office a copy of its order for assistance to Chris with notice a lien was claimed therefor on any real estate owned by him or by Alta Clausen, his spouse. This fully complied with the notice requirement of section 249.20 as to a lien for assistance furnished Chris on decedent's real estate in Harrison County.

Alta acquired her interest in the Harrison County real estate her brother left her at his death April 22, 1962, and the state board's lien for assistance furnished Chris up to then attached thereto at that time. This lien also secured the old-age assistance thereafter furnished Chris until decedent's death, as these payments accumulated. Pottawattamie County did nothing to give notice of any lien held by it on Harrison County real estate prior to decedent's death.

The State attorney general has ruled that liens of the State for old-age assistance as well as liens of a county for maintenance of the insane accumulate as payments are made each month. 1942 Report of the Attorney General (OAG), pages 100, 101. While this is not binding upon us, nor entitled to the weight of precedent, it should be carefully considered by us. City of Nevada v. Slemmons, 244 Iowa 1068, 1071, 59 N.W.2d 793, 794, 43 A. L. R.2d 693; State v. Garland, 250 Iowa 428, 434, 435, 94 N.W.2d 122, 126. We think the ruling is correct.

The home in Harrison County of which decedent owned a fifth interest sold for $7000. One fifth the net proceeds of the sale was paid to the administrator of decedent's estate. This net amount is subject to the state board's lien for old-age assistance furnished Chris.

The state board contends it has a lien for the old-age assistance furnished decedent from April 1, 1962, to April 1, 1963, and that the notice of lien filed by it in Pottawattamie County September 15, 1949, was a sufficient compliance with the notice requirement of section 249.20 as to decedent's interest in the Pottawattamie County farm she acquired from her brother. As previously shown, the notice referred to stated the lien was claimed for the assistance furnished under the board's first "order, together with subsequent orders of the State Department * * *."

The attorney general has ruled that the requirement of section 249.20 for filing with the county recorder a copy of the state department's order applies only to the first order, not to subsequent ones, and also that the specific sum for which a lien is claimed need·not be included in the notice. 1940 Report of Attorney General (OAG), pages 300, 301. We may assume, as appellant-state board would have us, without so deciding, this is a correct interpretation of section 249.20.

██ As we have tried to explain, when decedent's brother died April 22, 1962, the county's lien for decedent's care at Clarinda and the county home and the state board's lien for old-age assistance furnished decedent up to then ($884.84) attached, without priority between them. A lien for future payments of old-age assistance would not arise until the payments were made but, as previously stated, would ordinarily accumulate from month to month as made. But we think the state board is not entitled as against the county to a lien for old-age assistance furnished decedent after her brother died. Neither the state board nor the county could as against the other thus add to its lien after both liens attached, without priority between them.

As stated, the trial court fixed the amount of the county's lien at $6286.12, the assistance furnished by it to August 31, 1958, and disallowed a lien for assistance it furnished between

that date and March 31, 1962. Since the county took no appeal it is not entitled to a more favorable decision here on this point. Robbins v. Beatty, 246 Iowa 80, 92, 93, 67 N.W.2d 12, 19, and citations; Alberhasky v. Alberhasky, 250 Iowa 986, 999, 97 N.W.2d 914, 922; Kellerhals v. Kallenberger, 251 Iowa 974, 976, 103 N.W.2d 691, 692; 5 Am. Jur.2d, Appeal and Error, section 707. The lien of the county must therefore be limited to the amount fixed by the trial court.

Further, the liens of both the county and state board for assistance furnished decedent should be limited to the proceeds of the sale of decedent's interest in the Pottawattamie County farm. This is the only real estate decedent owned except her interest in the Harrison County home. The farm sold for $28,000 and one fifth the net proceeds could not exceed $5600. Thus the combined total of these liens of the county and state board respectively exceeds the sum subject thereto.

The total amount Alta's administrator received from the executrix of her brother's estate, $12,855.32, as Alta's share thereof, is nearly twice the combined proceeds of the sale of her share of the farm and residence property. This excess above such proceeds constitutes Alta's personal estate. The balance of the claim of the county, after subjecting the proceeds of the sale of decedent's share of the Pottawattamie County farm to the lien held by it in the amount fixed by the trial court and the balance of the claim of the state board for old-age assistance furnished decedent, after subjecting such proceeds to its lien for $884.84, plus the balance of the claim of the state board for assistance to Chris, after subjecting the proceeds of decedent's share of the Harrison County property to the lien against it, should be allowed as claims of the second class against decedent's estate. This claim of the county and those of the state board are equal in weight and the funds available for their payment should be applied pro rata between the two claimants.

To summarize our holding, the county and state board each has a lien against the net proceeds of the sale of decedent's share of the farm, the county for $6286.12 and the state board for $884.84. The state board has a lien against the net proceeds of the sale of decedent's share of the residence for the old-age

assistance furnished Chris. The balance of the county's claim and the balance of the state board's two claims should be allowed as claims of the second class against decedent's estate. Costs in this court are to be equally divided.

For further proceedings consistent with this opinion the cause is—Reversed and remanded.

All JUSTICES concur except JUSTICE SNELL who takes no part.